IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-01550-MSK-MJW

ASSOCIATION INSURANCE COMPANY,

     **Plaintiff,**

v.

**MCSWAIN METAL FABRICATION, INC.,
FRONTIER RESTORATION,
GENARO SANCHEZ, doing business as Sanchez Plumbing,
MELQUIADES RUBIO, doing business as Scorpion Masonry,
KLYDESDALE CONTRACTING, INC.,
CB CONCRETE, INC.,
DORNE BUTTS, doing business as DGB Construction,
NEW GENERATION PLASTERING, LLC, and
NIRON CONSTRUCTION, LLC,**

     **Defendants.**
_____

## OPINION AND ORDER DENYING MOTIONS FOR DEFAULT JUDGMENT
_____

     **THIS MATTER** comes before the Court pursuant to the Plaintiff's ("Association")

Motions for Default Judgment (**# 64, 65, 66, 67, 68, 69, 70, 71**) against all Defendants except

Frontier Restoration.

## FACTS

     Although the Amended Complaint (**# 22**) in this action is skeletal and conclusory, the

pertinent facts are straightforward.  Defendant Niron Construction ("Niron"), a general

contractor, managed the construction of some townhome residences in Denver Colorado.

Although the Amended Complaint never expressly states, it appears that the remaining

Defendants here were subcontractors who performed various services for Niron on that project.

1

In 2016, the buyers of those townhomes sued Niron in state court, alleging that the construction was defective in various ways. Again, the Amended Complaint here is fairly vague about that suit, but it is possible to infer that the Defendant subcontractors were also named as defendants in the state court lawsuit. Association states that it tendered a defense and indemnification to Niron, it's insured, in that action. It also appears to allege that it "tendered [a] defense and indemnity" to the Defendant subcontractors as well.[1] Beyond stating that a default judgment was entered against certain of the subcontractors in the state action, the Amended Complaint gives no indication about the scope, course, or outcome of that lawsuit.

It appears that,[2] as part of the contract between Niron and its subcontractors, Niron required that each subcontractor indemnify Niron for "any and all claims . . .arising out of, resulting from or related to the [subcontractor's] performance of work." The agreement also required that each subcontractor maintain comprehensive general liability insurance that "insure[s] the hold harmless and indemnification agreements" of the contract. Association contends that none of the Defendant subcontractors complied with these requirements and that, as a result, Association "has paid in excess of its policy obligations for Niron's defense."

Finally, although the subcontractor Defendants owed their various contractual duties to Niron, Association notes that its policy with Niron provides that "if [Niron] has rights to recover all or part of any payment we have made . . ., those rights are transferred to us." Thus,

---

[1]     It is somewhat difficult to parse exactly what occurred here. Clearly, Association did not purport to undertake the defense of both Niron and all of its subcontractors in the state court action, as conflicts of interest undoubtedly existed among those various parties. Moreover, the Amended Complaint notes that several of the Defendant subcontractors defaulted in the state court lawsuit, an outcome that would be anomalous if Association was tendering a defense on their behalf.

[2]     Many of Association's allegations in the Amended Complaint are made "upon information and belief." Association does not state the particular information it knows that gives rise to its beliefs.

Association appears to believe that it is entitled to assert any claims against the Defendant subcontractors that Niron would be able to assert.

Based on these allegations, Association brings the following claims against the subcontractor Defendants (all of which appear to be brought under Colorado law): (i) a request for a declaration that those Defendants are obligated to provide defense and indemnification to Niron (any by extension, Association) in the state court action, among other things; (ii) breach of contract, under a third-party beneficiary theory, in that the subcontractor Defendants breached the terms of their contract with Niron and that the Defendant subcontractors and Niron intended the terms of that contract to benefit Association; (iii) equitable subrogation, in that Association is entitled to recover from the Defendant subcontractors for amounts it paid on their behalf; and (iv) unjust enrichment.

With the exception of Defendant Frontier Restoration, none of the Defendants defended or appeared in this action. Association then filed motions for default judgment **(# 64-71)** against each of the Defendant subcontractors, as well as against Niron.[3] Each of the motions is substantively identical, and each asks for "a declaration that Association is entitled to recover from [the Defendant] amounts Association has paid toward the defense and/or indemnity of Defendant Niron in the underlying action." None of the motions is supported by an affidavit or other evidentiary material that attempts to quantify the amounts Association has paid on behalf of each Defendant, or otherwise elaborate on the bare assertions in the Amended Complaint.

## ANALYSIS

### A. Subject-matter jurisdiction

---

[3] None of the claims asserted in the Amended Complaint name Niron as a party. The relief Association requests in its motion for default judgment against Niron is "a declaration that Association is entitled to recover from [the Defendant subcontractors] amounts Association has paid toward the defense and/or indemnity of Defendant Niron."

Association invokes this Court's subject-matter jurisdiction under 28 U.S.C. §1332, premised on diversity of citizenship. Such jurisdiction exists when two criteria are met: the parties are citizens of diverse states, and the amount in controversy exceeds $75,000.

The Amended Complaint alleges that Association is a citizen of Georgia, being both incorporated and having its principal place of business there. As to the Defendants, Association alleges that three entities, Defendants McSwain Metal Fabrication, Klydesdale Contracting, and CB Concrete, are corporations incorporated and having their principal place of business in Colorado. Two Defendants, Dorne Butts and Melquiades Rubio, are identified as individuals, for whom Association has identified their "principal place of business" and "principal mailing address" as being in Colorado. The remaining Defendants, Genaro Sanchez[4] and New Generation Plastering (and, for that matter, Niron) are identified as limited liability companies; for these, Association offers only the conclusory assertion that "upon information and belief, the members of [each LLC] are citizens of the state of Colorado."

The assertion of the corporations' citizenship is sufficient to demonstrate their diversity from Association.

The allegations regarding the individual citizenship, however, are not. An individual's "principal mailing address" – whatever that phrase means – or "principal place of business" are not the equivalent of an individual's citizenship; indeed, even allegations of an individual's "residence" are not sufficient to establish domicile or citizenship. *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 781 F.3d 1233, 1239 (10th Cir. 2015). Although the Court can, in some circumstances, treat allegations relating to an individual's <u>presence</u> in the state to be *prima facie*

---

[4]     Association identifies Genaro Sanchez d/b/a Sanchez Plumbing LLC as a "limited liability company." By all appearances, Sanchez Plumbing, LLC might fit that description, but the caption appears to name Mr. Sanchez as the party, not the LLC.

evidence of that individual's citizenship, that *prima facie* showing is only sufficient to allow the case to move forward. Before judgment, the plaintiff must actually <u>prove</u> the individual's citizenship for purposes of subject-matter jurisdiction. *Id.* at 1239 & n. 2. Because Association has not come forward with evidence that establishes the actual citizenship of Mr. Butts and Mr. Rubio, this Court lacks subject-matter jurisdiction to enter a default judgment against them.

The Court also has doubt as to whether Association's allegation of the LLCs' citizenship is sufficient. An LLC is a citizen of every state in which any of its members is a citizen. *Id.* at 1237-38. Association has not attempted to identify any of the LLCs' members, offering only the conclusory assertion that all of those members, whoever they may be, are citizens of Colorado. Because federal courts are courts of limited jurisdiction, they presume that no jurisdiction exists without an adequate showing by the party attempting to assert it, and mere conclusory allegations of jurisdiction are insufficient. *U.S. ex rel. Hafter v. Spectrum Energy Care*, *Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). Because Association offers nothing more than a conclusory assertion as to the citizenship of the LLCs' members, it has failed to demonstrate sufficient federal subject-matter jurisdiction as to those entities.

For similar reasons, Association's assertions as to the amount in controversy are insufficient. The Amended Complaint states only that "the amount in controversy exceeds $75,000, exclusive of interests and costs." Association does not allege any actual facts that indicate the amount in controversy. This omission is particularly curious, as the Association has ostensibly made payments in specific amounts for the defense and indemnification of the subcontractor Defendants in the state court case, and thus is in a prime position to allege the amount of those payments, yet it has not. Moreover, because Association's claim against each Defendant arises from a separate contract, Association must show that the amount in controversy

is established separately as to <u>each</u> Defendant.  *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001).  It is not clear from Association's single conclusory assertion whether Association is asserting that it has paid over $75,000 in defense and indemnification costs due the conduct of <u>each</u> Defendant, some Defendants, or simply in the aggregate.

For these reasons, the Court finds that it presently lacks subject-matter jurisdiction over Association's claims, and thus, Association's motions for default judgment are denied.

### B.  Personal jurisdiction/service of process

The Court also has several concerns regarding the effectiveness of Association's service of process against certain Defendants.

As to Mr. Butts, the Association has tendered a document entitled "Affidavit of Corporate Service" **(# 24)**, even though Mr. Butts is named individually as a Defendant. Moreover, this affidavit purports to reflect that Association actually purported to serve "DGB Construction," not Mr. Butts himself.[5]  It did so by serving an unknown individual (who refused to give his name), who is purported to be the "Owner & Authorized Agent of DGB Construction."  The service occurred at the address in Lakewood, Colorado that, the Amended Complaint asserts, is Mr. Butts' "principal mailing address" and the "principal street address" reported by the Colorado Secretary of State.

Fed. R. Civ. P. 4(e) requires service upon an individual to be accomplished by: (i) delivery to the individual personally, (ii) leaving the process at the individual's residence or abode with a person who resides there; (iii) serving an authorized agent for the individual; or (iv) serving the individual in accordance with state law.  Colo. R. Civ. P. 4(e)(1) adds the ability to

---

[5]     The Summons, attached to Docket # 36, also indicates that it is directed to DGB Construction, rather than to Mr. Butts.

serve the individual by leaving a copy of the process at the individual's "usual workplace" with the person's "supervisor, secretary, administrative assistant, bookkeeper, human resources representative, or managing agent." It is not clear whether Association is purporting to have served Mr. Butts personally (that is, whether Association is asserting that the unnamed individual that was served was Mr. Butts himself), whether it contends that the Lakewood address is Mr. Butts' residence and that the unnamed person was a co-resident of that property, or whether the Lakewood address is Mr. Butts' usual workplace and the unnamed person was one of the officers listed in Colorado Rule 4(e)(1). Association has not tendered any affidavit to explain the additional facts necessary to permit the Court to conclude that service upon Mr. Butts suffices under Fed. R. Civ. P. 4. Thus, the Court cannot conclude that Mr. Butts was properly served.

The reverse problem is present with Defendant Genaro Sanchez. According to the Amended Complaint, Genaro Sanchez "is a Colorado limited liability company" with its place of business on Yampa Street in Commerce City, Colorado. The process server's return of service (**# 35**) indicates that service was made upon "Genaro Sanchez, personally" at his "usual place of abode" at the same Yampa Street address in Commerce City. It is unclear whether, and to what extent, Genaro Sanchez, the individual, is connected to "Genaro Sanchez", the entity. It may be that the individual and entity are one and the same, and that service upon one is service upon the other. *See e.g.* Fed. R. Civ. P. 4(h)(1)(A) (legal entity may be served in the same manner as serving an individual). It may also be the individual is nothing more than a namesake or mascot of the otherwise-legally-distinct entity, such that serving the individual is insufficient to serve the entity (*e.g.* service upon Bob Evans the individual, founder of the eponymous restaurant chain, might not be sufficient to serve the chain's actual owner, Golden Gate Capital). Once again, Association has not provided an affidavit or other evidence that clarifies how the

individual who was served is connected to the entity named as the Defendant here. Thus, the Court cannot conclude that Genaro Sanchez was properly served.

### C. Merits

Finally, were the Court to reach the merits, it would find that the Amended Complaint's allegations are so unspecific and conclusory (and sometimes, internally inconsistent) to permit judgment to enter even upon default by the Defendants.

Putting aside, for the moment, Association's first claim for declaratory relief, its second claim sounds in breach of contract. Association does not purport to have entered into any contracts with any of the subcontractor Defendants; rather, Association is asserting that these Defendants breached a contract they had with <u>Niron</u>. The title of this claim seems to suggest that Association is pursuing the breach of contract claims under a third-party beneficiary theory, but the substantive allegations of the Amended Complaint seem to suggest that Association is asserting that, by operation of the terms of its Policy with Niron, Niron has been deemed to assign any potential causes of action Niron has against the Defendant subcontractors to Association. Both theories are problematic, albeit for different reasons.

Under Colorado law, a non-party to a contract may sue to enforce the terms of the contract only if the actual parties to the contract intended the third party to directly benefit that third party. *Villa Sierra Condominium Assn. v. Field Corp.*, 878 P.2d 161, 166 (Colo.App. 1994). The mere fact that a contract contemplates (or even references) another party does not suffice to render that party a third-party beneficiary; rather, the parties must mutually intend their contract to confer some benefit upon the third party. *Gorsuch, Ltd. v. Wells Fargo Natl. Bank. Assn.*, 771 F.3d 1230, 1238 (10th Cir. 2014). Nothing in the Amended Complaint alleges that the Defendant subcontractors (or Niron, for that matter) intended that their agreement to indemnify

8

Niron for defective construction performed by the subcontractor or to include Niron as an additional insured on the subcontractor's liability policy. Indeed, there are no facts alleging that insurance was obtained with the intent of conferring some benefit on Association specifically, or Niron's insurer(s) generally. In such circumstances, any breach of contract claim by Association premised upon a third-party beneficiary theory would be deficient and subject to dismissal. *See Amercan Cas. Co. v. Glaskin*, 805 F.Supp. 866, 870 (D.Colo. 1992).

Association's apparent alternate theory derives from its allegation that the Policy it has with Niron provides that "If [Niron] has the rights to recover all of part of any payment we have made under this Coverage Part, those rights are transferred to us . . . At our request, the insured will bring 'suit' or transfer those rights to us and help us enforce them." By all appearances, this language requires an affirmative act by Niron to "transfer those rights to [Association]." However, Association has not alleged facts showing that Niron has done so. (Indeed, the fact that Association has named Niron as a Defendant in this case suggests that Niron has <u>not</u> yet done so.) Moreover, it is not clear what rights that Niron actually has to "recover all or part of the payment" that Association has made in the state action. It may be that the indemnification provision of the Niron-subcontractor agreement might permit Niron to recover from the subcontractor some of the amounts paid by Association for the subcontractor's benefit (payments that, the Court emphasizes, are mentioned in the Amended Complaint in entirely conclusory terms). But it is not necessarily clear that the subcontractors' failure to name Niron as an additional insured on their own general liability insurance policies would give rise to a cause of action for breach of contract that would transfer from Niron to Association under the Policy's language. Nothing in the Amended Complaint or Associations' motions for default judgment attempts to unravel the various theories and allegations that are aggregated within Association's

breach of contract claim. For these and other reasons,[6] the Court would find that the conclusory assertions in the Amended Complaint, even if deemed admitted by the subcontractor Defendants' default, does not suffice to state a cognizable claim for breach of contract.

As to Association's claims for equitable subrogation and equitable contribution/indemnity, the Amended Complaint is insufficient simply due to its conclusory nature. Association alleges that it has paid sums in defense or indemnification of the Defendant subcontractors during the state action, but it gives no examples to support that conclusion. Although it may be possible that Association did indeed tender a separate defense to each of the Defendant subcontractors in the state lawsuit and even paid sums on their behalf, it is also possible that Association's claim is premised upon a belief that, by tendering a defense and indemnification <u>solely to Niron,</u> Association engaged in acts that incidentally benefitted the subcontractor Defendants, and Association is attempting to collect on that incidental benefit.

Moreover, because Association asserts claims against numerous subcontractor Defendants, it is required to explain how payments made by Niron relate to a <u>particular Defendant's</u> obligation to the townhome owners. Indeed, the Amended Complaint is curious in that it does not expressly allege (much less do so in a specific fashion) that <u>any</u> of the subcontractor Defendants rendered defective performance of their respective construction tasks. Without a well-pled assertion that, for example, CB Concrete's work on the townhomes was deficient in some particular way, Association has not sufficiently alleged that payments it made to the townhome owners are obligations that, justifiably, should have been paid by CB Concrete.

---

[6] For example, if Association is purporting to assert a claim for breach of contract that would otherwise belong to Niron, it must allege that Niron has fully performed all of its own obligations to the Defendant subcontractors under the parties' contract, or that such performance was excused. *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Nowhere in the Amended Complaint does Association make such an allegation.

Because Associations' purely conclusory pleadings fail to meet the "plausibility" standard of *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), Association's claims for equitable subrogation and equitable contribution/indemnity also fail to state a claim sufficient to support a default judgment.

Finally, the Court reflexively rejects any argument that Association is entitled to a default judgment on its unjust enrichment claims, for the same reasons set forth above (among others).

<u>**CONCLUSION**</u>

For the foregoing reasons, Association's Motions for Default Judgment **(# 64-71)** are **DENIED**. Within 21 days of this Order, Association shall file an Amended Complaint that cures the jurisdictional and pleading defects noted herein, or otherwise show cause why this action should not be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), failing which the action will be dismissed.

Dated this 7th day of December, 2017.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge